RIMM, J.T.C.
This is a local property tax matter involving the recent amendments in N.J.S.A. 54:4-23.3 and N.J.S.A. 54:4-23.5 to the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 to -23.23 (“the Act”). The amendments were effective December 15, 1995. L. 1995, c. 276, § 9. The amendments have been variously referred to as the “horse-farm amendments,” because, although they refer to “livestock” generally, they were essentially meant to benefit “the growing equine sector of agriculture” in New Jersey. Governor’s Conditional Veto Message to Senate Bill 1746 (Sept. 28, 1995).
The property which is the subject of this litigation is designated as Block 39.01, Lot 14.01 on the tax map of defendant municipality, Millstone Township. For the tax year 1995, the property was assessed as follows:
Land $181,000
Improvements 147,000
Total $328,000.
The taxpayers were dissatisfied with the assessment, and they filed a petition of appeal with the Monmouth County Board of Taxation seeking a reduction. By a judgment dated June 21, 1995, the Monmouth County Board of Taxation affirmed the original assessment. The judgment also provides as follows: “Memorandum explaining basis for judgment: Farmland Denied For 1995 Boarding Horses.” Plaintiffs then filed a timely complaint in the Tax Court challenging the assessment.[1]
The subject property consists of a total of 13.06 acres. Plaintiffs concede that one acre is the curtilage on which their home is located and that it does not qualify for farmland assessment. They claim, however, that the remaining 12.06 acres are to be assessed as farmland. The 12.06 acres consist of eight acres of *347 permanent pasture land, two acres used as a training area, and 2.06 acres of woodland, which the municipality has stipulated is appurtenant woodland. The two acres used for training have a riding rink, a dressage area, and a six-stall barn. As of October 1, 1994, the eight acres of permanent pasture were used for grazing-horses.
There is no dispute between the parties as to the income requirements under N.J.S.A. 54:4-23.5, nor as to the required number of years of activity under N.J.S.A. 54:4-23.2. The sole issue in the case involves statutory interpretation.
Prior to its amendment in December 1995, N.J.S.A. 54:4-23.3 provided, in pertinent part as follows:
Land shall be deemed to be in agricultural use when devoted to the production for sale of plants and animals useful to man, including but not limited to: forages and sod crops; grains and feed crops, dairy animals and dairy products; poultry and poultry products; livestock, including beef cattle, sheep, swine, horses, ponies, mules or goats, including the breeding and grazing of any or all of such animals; bees and apiary products; fur animals; trees and forest products; . . . .
[ (Emphasis added).]
In pertinent part, N.J.S.A. 54:4-23.3 now provides as follows, with the amendment underlined:
Land shall be deemed to be in agricultural use when devoted to the production for sale of plants and animals useful to man, including but not limited to: forages and sod crops; grains and feed crops; dairy animals and dairy products; poultry and poultry products; livestock, including beef cattle, sheep, swine, horses, ponies, mules or goats, including the breeding, boarding, raising, rehabilitating, training or grazing of any or all of such animals, except that “livestock” shall not include dogs; bees and apiary products; fur animals; trees and forest products;____
Prior to the recent amendment, N.J.S.A. 54:4-23.5, in pertinent part, read as follows:
Land, five acres in area, shall be deemed to be actively devoted to agricultural or horticultural use when the gross sales of agricultural or horticultural products produced thereon together with any payments received under a soil conservation program have averaged at least $500.00 per year during the 2-year period immediately preceding the tax year in issue, or there is clear evidence of anticipated yearly gross sales and such payments amounting to at least $500.00 within a reasonable period of time.
In addition, where the land is more than five acres in area, it shall be deemed to be actively devoted to agricultural or horticultural use when the gross sales of agricultural or horticultural products produced on the area above five acres together with any payments received under a soil conservation program have *348 averaged at least $5.00 per acre per year during the 2-year period immediately preceding the tax year in issue, or there is clear evidence of anticipated yearly gross sales and such payments amounting to an average of at least $5.00 per year within a reasonable period of time;. . . .
In pertinent part, N.J.S.A. 54:4-23.5 now provides as follows, with the amendment underlined:
Land, five acres in area, shall be deemed to be actively devoted to agricultural or horticultural use when the amount of the gross sales of agricultural or horticultural products produced thereon, any payments received under a soil conservation program, fees received for breeding, raising or grazing any livestock, income imputed to land used for grazing in the amount determined by the State Farmland Evaluation Advisory Committee created pursuant to section 20 of P.L.1964, c. 48 (C. 54:4-23.20), and fees received for boarding, rehabilitating or training any livestock where the land under the boarding, rehabilitating or training facilities is contiguous to land which otherwise qualifies for valuation, assessment and taxation under this act, have averaged at least $500.00 per year during the 2-year period immediately preceding the tax year in issue, or there is clear evidence of anticipated yearly gross sales and such payments amounting to at least $500.00 within a reasonable period of time.
In addition, where the land is more than five acres in area, it shall be deemed to be actively devoted to agricultural or horticultural use when the amount of the gross sales of agricultural or horticultural products produced on the area above five acres, any payments received under a soil conservation program, fees received for breeding, raising or grazing any livestock, income imputed to land used for grazing in the amount determined by the State Farmland Evaluation Advisory Committee created pursuant to section 20 of P.L.1964. c. 48 (C. 54:4-23.20), and fees received for boarding, rehabilitating or training any livestock where the land under the boarding, rehabilitating or training facilities is contiguous to land which otherwise qualifies for valuation, assessment and taxation under this act, have averaged at least $5.00 per acre per year during the 2-year period immediately preceding the tax year in issue, or there is dear evidence of anticipated yearly gross sales and such payments amounting to an average of at least $5.00 per year within a reasonable period of time;. . . .
The legislation thereby amended the definition of “agricultural use” in N.J.S.A. 54:4-23.3 to include the “gra2ing” of livestock as an agricultural use by itself. The legislation also amended the income requirements of N.J.S.A. 54:4-23.5 which can now be satisfied by “fees received for boarding, rehabilitating or training any livestock where the land under the boarding, rehabilitating or training facilities is contiguous to land which otherwise qualifies for valuation, assessment and taxation” as farmland.
The municipality asserts that plaintiffs are not entitled to farmland assessment qualification because their property is not *349 “contiguous to land which otherwise qualifies for valuation, assessment and taxation under this Act,” citing the current language of N.J.S.A. 54:4-23.5. The municipality interprets this language to mean that plaintiffs’ entire property must be contiguous to land which would otherwise qualify for farmland assessment under the Act before its current amendments and which land is owned by plaintiffs. The municipality does not challenge plaintiffs’ right to have their property assessed as farmland for any other reason.
The taxpayers, on the other hand, in support of their position that they are entitled to farmland assessment for the entire 12.06 acres, argue that the municipality’s interpretation of the language on which it relies is not indicative of the legislative intent to provide tax relief to the owners of horse farms. They say that the statute does not mean that a horse farmer has to also own, and have contiguous to the area claimed to be a horse farm, at least another five acres actively devoted to agricultural or horticultural use as defined before the horse-farm amendments. They also argue that the eight acres used for grazing horses as of October 1, 1994, and which they characterize as permanent pasture, qualify on their own for farmland assessment under the recent amendments to the Act. In plaintiffs’ view, because the two-acre area used for training and boarding horses is contiguous to the eight acres of pasture land, the two-acre area also qualifies for farmland assessment under the amended versions of N.J.S.A. 54:4-23.3 and N.J.S.A. 54:4-23.5. Plaintiffs also submit that the remaining 2.06 acres qualify as appurtenant woodland by the municipality’s stipulation.
Prior to the December 15, 1995 amendments of the Act, the grazing of horses for a fee did not qualify as an agricultural use for purposes of farmland assessment. Dowd v. Howell Tp., 15 N.J.Tax 720 (App.Div.1996), aff'g 15 N.J.Tax 82 (Tax 1995). In Dowd, the plaintiff taxpayers sought farmland qualification for their property under the version of N.J.S.A. 54:4-23.3 that was in effect prior to December 15, 1995, contending that grazing horses for a fee met the statute’s definition of “agricultural use.” Rejecting that argument and denying farmland qualification, the Appel *350 late Division concluded that “[g]razing alone without breeding does not satisfy the statute.” Dowd, supra, 15 N.J.Tax at 721.
In the December 15, 1995 amendment to N.J.S.A. 54:4— 23.3, the Legislature deleted the conjunction “and” in front of the word “grazing” from the prior statutory provision and inserted the conjunction “or” in front of the word “grazing” in the amended statutory provision. In interpreting a statute and in attempting to ascertain its meaning and the legislative purpose, “every word, sentence and clause shall, if possible, be given full force and effect.” Cobb v. Waddington, 154 N.J.Super. 11, 17, 380 A.2d 1145 (App.Div.1977), certif. denied, 76 N.J. 235, 386 A.2d 859 (1978) (citation omitted). ‘When the wording of a statute is clear and explicit we are not permitted to indulge in any interpretation other than that called for by the express words set forth.” Duke Power Co. v. Patten, 20 N.J. 42, 49, 118 A.2d 529 (1955) (citation omitted). When the Legislature deleted the conjunction “and” in front of the word “grazing” from the prior form of N.J.S.A. 54:4-23.3 and inserted the conjunction “or” in front of the word “grazing” in the amended version of N.J.S.A. 54:4-23.3, the effect was to make the grazing of livestock a qualifying use for farmland assessment, separate and apart from the breeding of livestock for sale.
Additional support for this conclusion can be found in the amendment cited above to N.J.S.A. 54:4-23.5. At the same time that it changed the definition of “agricultural use,” the Legislature also explicitly permitted the income requirements for farmland assessment to be satisfied by fees from the grazing of livestock or by income imputed to land used for grazing as determined by the State Farmland Evaluation Advisory Committee.
Here, there is no dispute that plaintiffs’ eight acres of pasture land were used for grazing horses during the tax year at issue. There is also no dispute that the income requirements for farmland assessment were met by the taxpayers. Accordingly, I conclude that plaintiffs’ eight acres of pasture land qualify for farmland assessment.
*351 The two acres of land on Block 39.01, Lot 14.01 that plaintiffs used for a riding rink, a dressage area, and a six-stall barn also qualify for farmland assessment. For the tax year and pre-tax years in issue, there is no dispute that plaintiffs boarded and trained horses on this part of the property in return for fees paid by the owners of those horses.
Prior to the amendment of N.J.S.A. 54:4-23.3 in December 1995, the boarding, rehabilitating or training of livestock were not agricultural uses for which farmland assessment could be granted. See Miele v. Jackson Tp., 11 N.J.Tax 97, 99 (App.Div.1989) (holding that under Act in effect before December 15, 1995, bringing race horses to a farm in order to rest them, rehabilitate them between races, or care for them if they were injured could not qualify the farm for farmland assessment); Bloomingdale Indus. Park v. Borough of Bloomingdale, 1 N.J.Tax 145 (Tax 1980) (denying farmland qualification where primary purpose for which land was used was for boarding and training of horses and training of riders, even though property was also used for production of horses for sale).
The Second Reprint of Senate Bill No. 1746, originally passed by the Senate and the Assembly, sent to the Governor for her signature, and intended by the Legislature to contain the horse-farm amendments, provided, in pertinent part, as follows:
Land, five acres in area, shall be deemed to be actively devoted to agricultural or horticultural use when the amount of the gross sales of agricultural or horticultural products produced thereon, any payments received under a soil conservation program, or fees received for breeding, boarding, raising, rehabilitating, training or grazing any livestock or any combination of such sales, payments and fees has averaged at least $500.00 per year during the 2-year period immediately preceding the tax year in issue, or there is clear evidence of anticipated yearly gross sales and such payments amounting to at least $500.00 within a reasonable period of time.
In addition, where the land is more than five acres in area, it shall be deemed to be actively devoted to agricultui’al or horticultural use when the amount of the gross sales of agricultural or horticultural products produced on the area above five acres together with, any payments received under a soil conservation program, or fees received for breeding, boarding, raising, rehabilitating, training or grazing any livestock or any combination of such sales, payments and fees has averaged at least $5.00 per acre per year during the 2-year period immediately preceding the tax year in issue, or there is clear evidence of anticipated yearly gross sales and such *352 payments amounting to an average of at least $5.00 per year within a reasonable period of time; . . . .
[ (Emphasis added).]
The legislative history of the horse-farm amendments indicates the Legislature’s intent to expand farmland qualification to horse farms and supports a result granting farmland assessment for land used for grazing horses and for acreage used for training and boarding horses. The sponsor’s statement contained the following paragraph:
This bill would expand the definition of land devoted to agricultural use to include the boarding or training of livestock. Currently, for land to be considered actively devoted to agricultural or horticultural use, the land must be at least five acres and the gross sales of products produced thereon together with any payments received under a soil conservation program must have averaged at least $500 per year during the two-year period immediately preceding the tax year in issue. Tins bill would allow the fees received for breeding, boarding, training or grazing any livestock to be considered in meeting the $500 eligibility requirement. Land owners that had been denied farmland assessment based on these criteria would qualify upon the effective date of the bill.
[ (Emphasis added).]
The Senate Budget and Appropriations Committee’s statement to the First Reprint of Senate Bill No. 1746 contained in it essentially this same language. The Senate Senior Citizens, Veterans Affairs and Agricultural Committee’s statement to Senate Bill No. 1746 also contained essentially the same language.
The bill as originally passed by the Legislature and sent to the Governor, did not, however, contain in it the words “contiguous to land which otherwise qualifies for valuation, assessment and taxation under this Act,” which words give rise to the dispute in this matter.
On September 28, 1995, Senate Bill No. 1746 (Second Reprint) was conditionally vetoed by the Governor and returned to the Senate with her recommendations for reconsideration. N.J. Const., art. V, § 1, ¶ 14; In re McGlynn, 58 N.J.Super. 1, 155 A.2d 289 (App.Div.1959).
In her veto message, the Governor noted that the second reprint of the bill expanded the Act’s definition of land devoted to agricultural use “to include the boarding, raising, rehabilitation or *353 training of livestock, and would permit any combination of sales, payments and fees derived from these activities to be considered for reaching the income requirements of the Act.” The message also notes that the Secretary of Agriculture had advised the Governor that “the growing equine sector of agriculture, which would benefit from including boarding, training and rehabilitation of livestock as agricultural uses, should be encouraged in order for our farmers to remain competitive and viable in light of the evolving nature of agriculture.”
The Governor then noted that, despite the desirable goals of the bill, it appeared flawed. The Attorney General had expressed concern that including boarding, raising, rehabilitating and training of livestock as specific uses which may qualify for farmland assessment could be applied to land which is not actively devoted to agricultural use, resulting in the qualification of that land as “farmland.” Under the language of the Second Reprint, a stable used for temporarily boarding horses at a race track might qualify for farmland assessment if it met the income, area and application requirements of the Act.
Addressing these concerns, the specific language of the veto message, in pertinent part, reads as follows:
Page 2, Section 2, Lines 47-48: After “livestock” delete “, or any combination of such sales, payments and fees has” and insert “, income imputed to land used for grazing in the amount determined by the State Farmland Evaluation Advisory Committee created pursuant to section 20 of P.L.1964, c. 48 (C. 54:4-23.20), and fees received for boarding, rehabilitating or training any livestock where the land under the boarding, rehabilitating or training facilities is contiguous to land which otherwise qualifies for valuation, assessment and taxation under this act, have”
Page 3, Section 2, Lines 6-7: After “livestock” delete “,or any combination of such sales, payments and fees has” and insert “, income imputed to land used for grazing in the amount determined by the State Farmland Evaluation Advisory Committee created pursuant to section 20 of P.L. 1964, c. 48 (C. 54:4-23.20), and fees received for boarding, rehabilitating or training any livestock where the land under the boarding, rehabilitating or training facilities is contiguous to land which otherwise qualifies for valuation, assessment and taxation under this act, have”
The Governor’s veto message responded to the concerns about the kind of property that might qualify under the language of the Second Reprint by recommending that the “bill be amended to *354 indicate that boarding, raising, rehabilitating or training livestock must be conducted in conjunction with an agricultural or horticultural use if the land upon which those activities occur is to qualify for valuation and assessment as farmland under the Act.” Since technically, the boarding, rehabilitating, and training of livestock were “agricultural uses” under the Second Reprint of the bill, the Governor’s goal was to ensure that farmland qualification for land used for facilities for boarding, rehabilitating or training of livestock be contingent upon the land’s contiguity to land used for some other kind of agricultural or horticultural use, apart from the boarding, rehabilitating or training of livestock.
Consistent with this goal, the Governor’s proposed amendments sought to change the Second Reprint of the bill to require, as noted in her conditional veto message, “that fees received for boarding, rehabilitating or training livestock be counted toward achieving the income requirements for farmland assessment only if such operations take place on land which is contiguous to land which otherwise qualifies under the Act” (emphasis added). The Third Reprint of Senate Bill No. 1746 contained the Governor’s recommendations and was approved on December 15, 1995 as L. 1995, c. 276.
The municipality, in its contentions on statutory interpretation, has misunderstood the language and purpose of this amendment. Here, plaintiffs eight acres of pasture land separately qualified for farmland assessment for the tax year at issue under the amendments. The two acres containing the stable, training rink, and dressage area are contiguous to the eight acres of qualifying pasture land. Thus, under the explicit language of the second paragraph of N.J.S.A. 54:4-23.5, these two acres met the contiguity requirement for the tax years at issue. That plaintiffs produced enough income to satisfy the requirements of the second paragraph of N.J.S.A. 54:4-23.5 is not disputed by the municipality.
Accordingly, I conclude that the two acres of plaintiffs’ property used for boarding and training horses also qualify for farmland assessment for the tax year at issue. I further note that *355 the municipality has stipulated that the remaining 2.06 acres of woodland would qualify for farmland assessment as appurtenant woodland under the New Jersey case law, if the ten-acre portion of the property was found to qualify for farmland assessment. See Wiesenfeld v. Township of So. Brunswick, 166 N.J.Super. 90, 398 A.2d 1342 (App.Div.1979) (defining appurtenant woodland); Urban Farms, Inc. v. Township of Wayne, 159 N.J.Super. 61, 386 A.2d 1357 (App.Div.1978) (same); Township of Andover v. Kymer, 140 N.J.Super. 399, 356 A.2d 418 (App.Div.1976) (same).
Pursuant to R. 8:9-3, the parties have thirty days from the date of this opinion to submit to the court their agreed upon computations for the assessment of the subject property. Pursuant to R. 8:9-4, if the parties are unable to agree as to the amount of the assessment, I direct them to contact my chambers to schedule the matter for further hearing on the amount of the assessment for the farmland qualified land and the amount of the assessment for the house and nonqualified land.

 Under N.J.S.A. 54:4-23.13c, plaintiffs are permitted to seek farmland qualification for their property for the 1995 tax year despite the fact that the amendments at issue only became effective on December 15, 1995.